The next case on the calendar is United States v. Edinger. Good morning, Your Honors. Matt Larson of the Federal Defenders for Mr. Edinger. Your Honors, when we objected in district court to the warrantless search condition here, the reason that the government gave for it, which the judge accepted, was that it could be helpful in terms of just ensuring that the defendant is not engaging in any of this conduct ever again. But as this court made clear over 20 years ago in the Doe case, elimination of any possibility of risk is not the legal standard. Moreover, in the Doe case, the judge had not made a finding that Mr. Doe actually posed any risk of recidivating, and that fact is present here as well. Judge Gardefee made very clear that specific deterrence was not a concern. He said it on the record, page 52 of the appendix. He explained why his concern was general deterrence. That's why he was giving a six-month prison term. But that doesn't explain why the specific warrantless search condition here is justified. So to make clear, the reason that was offered by the government for justifying this condition is a reason that this court rejected over 20 years ago. It was a legal error, and a legal error is necessarily an abuse of discretion. For that reason... Is there any difference between this condition and others imposed in that you described it as a warrantless search, and it certainly is a warrantless search, but it's not quite a random search in that the probation officer has to have a reasonable belief that contraband or evidence of a violation may be found, and presumably needs to have a reason for that. So it's something kind of in between a warrant and permission to come in and sweep at any time of day or night. Isn't that right? Yes, and as the Court is aware, reasonable suspicion is the lowest possible threshold for searching a home, despite searching a home being the greatest violation of privacy that the Supreme Court has recognized. Putting that to the side, the question here is, is this condition reasonably related to the relevant sentencing factors, and does it work a greater deprivation of liberty than reasonably necessary? We've briefed why it fails both of those tests, and failing either one means it has to be struck. Now, please direct me to areas of concern for the Court. I think we laid out why the legal error is pretty clear in light of the Doe case, in light of the Brown case, which made clear that you can't impose a condition just in case. There has to be an evidentiary grounding, something that makes sense for invading the person's privacy. But here, Judge Gardefied made very clear that this first-time offender was at no risk of recidivating. He lives at his home with his wife and four adult children. Is it fair to say that he was at no risk of recidivating? I mean, he did have specific deterrence in mind, and that is a consideration that the government is entitled to and the Court is entitled to take into account in its discretion in imposing conditions. Isn't that right? Your Honor is right. I probably shouldn't have said no risk. But our point is that the 21 other conditions of supervision adequately address that risk. Why is that right? Why is that so clear on this record? I mean, this was he may have been a first-time offender, but the circumstances of this very offense, if I understand them correctly, is that he had negotiated for the purchase of about $140,000 worth of personal property stolen. He'd done it in multiple locations. He'd done it in the space of days. And in that context, imposing a condition of if there is a reasonable basis on the probation officer's part to think that there may be evidence to be found in a particular place, he has the authority to search. Why is that not reasonably related to the circumstances of this offense? Because in this offense, and I do want to make the record very clear, because the government, I think, is trying to muddy the waters in its brief by invoking the PSR paragraphs. All the PSR shows is that there were two illicit purchases here, of coins and of diamonds. The coins were bought at the pawn shop. There's no indication of where the diamonds were bought in the PSR. There's no factual finding. Is there a reference that he traveled to a basement of a co-conspirator who I'm assuming is Mr. Shaw? The co-conspirator is not Mr. Shaw. Not Mr. Shaw. Because in that paragraph, Your Honor, the paragraph makes clear this is paragraph 15 of the PSR. Edinger is telling the FBI that prior to meeting with Mr. Shaw to purchase the coins, he went to C.C. One's house in Inwood, New York, to review jewelry that C.C. One had in his basement. So not Mr. Shaw, but another co-conspirator, but again, a location outside the pawn shop. Indeed, that's correct, Your Honor. But here the condition subjects not only Mr. Edinger's home to search, without a warrant, but his body, his car, and any other premises under his control. And again, we have to look as to whether the judge made a finding adequate to support this. And Judge Gard if he said, it may well be that this whole experience has been sufficiently unpleasant that specific deterrence is satisfied. I am concerned about the need for general deterrence. And he said, Mr. Edinger has no criminal record. He suffers from mental health issues, et cetera, et cetera. He made clear. There's no finding here that the government can point to to say that this is necessary. And especially given the second consideration, is it a greater deprivation of liberty than necessary? The answer is yes, given all of the other conditions, including mental health treatment, community service, and most especially home visits. And although I phrased it as home visits, it's actually visits anywhere that the probation officer asks. The probation officer has to be able to allow to visit Mr. Edinger at home, at work, wherever. That is more than adequate to ensure. So are you suggesting that if there were not a condition requiring him to get mental health treatment that the search of the home on reasonable suspicion would become appropriate? No. No. No, I'm not, Your Honor. So I don't really understand your argument that there are a lot of other conditions and therefore this one's unnecessary. Well, I think the point is the panoply of other conditions. The mental health treatment and presumably the alcohol and potentially drug treatment as well is meant to mitigate against conditions which may lead him into a life of criminality, to guard against any relapse. These conditions are sufficient to do that. What's more than sufficient on this record, and not in every case, that's not our argument, what's more sufficient on this record is the condition that we objected to here. To go into his home, to search his body, to go into his home where his wife and four adult children live, by the way, they're all subject to this as well. That's a greater deprivation of liberty than reasonably necessary. To search his home, his body, his car, anywhere else under his control, that's uncalled for. We objected to it here. It fails both tests of the 3583D analysis. Doesn't the record show that he was involved in the planning for the home invasion in Greenwich that led to the fencing of the coins and the diamonds? The planning, no. And if I'm misspeaking, I'm sure the government will correct me. But I'm aware of no evidence that he planned that. I think the point in the PSR, he's generally aware that Mr. Shaw was a burglar. But I'm not aware of evidence, and I'm sure I'll be corrected if I'm mistaken, that he had any role in planning this invasion. Okay. Thank you. Good morning, and may it please the Court. My name is Jason Swergold. I'm an assistant United States attorney in the Southern District of New York. I represent the government on appeal, and I represented the government in the district court. And since there were a couple of factual issues that were just addressed, I think I'll just start with those if it's okay. So Mr. Larson is correct. There was no evidence that Mr. Ettinger was involved in specifically planning the December 2014 burglary. I think what's in the record is sort of Judge Gardefee's discussions about the seriousness of the offense and the fact that individuals who hold themselves out as fences for people who engage in stealing stolen property sort of incentivizes them to continue to do it because they know that they have somebody who's going to be able to move the property for them. And he did travel to a co-conspirator's basement to examine the jewelry? So that's the second point, Your Honor. And that is a – and it's something that the government should have just corrected when probation sent out the PSR. As the Court's aware, the government sends a offense conduct, and then probation takes it and writes it into the summary that's in the PSR. CC1 and Shaw are actually the same person. And that actually, I think, inures to the benefit of Mr. Ettinger because if it was more than one person where he was going to multiple different locations, it's even more obvious why Judge Gardefee did not abuse his discretion. But even though it's still the same person here, that he traveled to Shaw's apartment to look at jewelry, Shaw is a person he's been dealing with for a decade, that he knows is a thief, that he's purchased stolen property from, and in this specific offense conduct, purchased two different types of stolen property, the $100,000 in diamonds and the $40,000 in rare gold coins. Well, there seems to be a factual dispute between the two of you as to whether there is – the record is clear that there had been other purchases from Mr. Shaw in the past, so that there's more than just the offense conduct here.  Yes, Your Honor. And I think that – so the paragraph that's in dispute here really in the PSR is paragraph 9, which says that Ettinger had worked at a pawn shop in New Jersey. Then the next sentence, and this is really what it comes down to, for approximately 10 years, Ettinger knew a man named Jerome Shaw who Ettinger knew as a burglar and who he would purchase stolen items from. The very fair and plain reading of that, there's no time limit modifications on any particular parts of that sentence. It's that he knew Shaw, had dealt with him for 10 years, and had purchased stolen property from him. And if you look – if Your Honors look at the sentencing, the sentencing transcript, that was an undisputed fact throughout sentencing. The government made that argument. Judge Gardefee, in imposing sentence, talked about the fact that Mr. Ettinger had repeated dealings beyond the two particular purchases that are then and that was completely undisputed at the sentencing phase. But even if there's – and these are undisputed facts. Judge Gardefee found the facts in the PSR. There were no objections from defense counsel. And Judge Gardefee is allowed to draw reasonable inferences from those undisputed facts. Even if, however, even if it was really only those two instances, there is still evidence in the record that Mr. Ettinger went to places other than the pawn shop to engage in criminal activity. He went to purchase items from the defendant's – from Jerome Shaw's home. He went there to look at – to look at jewelry that – for evaluation purposes. And the standard here – I'm sorry. Is that one place or two places? The same place, Your Honor. He went just to Shaw's home. He went to the same place, Shaw's home, which is on Long Island. The pawn shop was in New Jersey. So there is a place outside of the pawn shop where he is going to engage in part of this offense conduct. And the standard here is that Judge Gardefee would have had to abuse his discretion in finding that the search condition was reasonably related, the abuse of discretion and reasonably related. It's not unlimited, but it is a very deferential standard to Judge Gardefee. Do we have to take into account the privacy interests of the other inhabitants of the house? Well, Your Honor, and I think if I may just pull up the judgment in this case. I mean, part of the condition of supervised release is that an individual who has a diminished expectation of privacy when they're on supervised release is – and it says right in the judgment, and this is on – this is in the appendix at page 65 – is supposed to inform the other residents of the home or the premises – let's say it's a business – that this individual is subject to this search condition. And so there is the possibility that if probation has a reasonable basis to believe that there might be contraband in this location or that it might contain evidence of a violation of supervised release, that by being in that same location with them, there may come a time when that location is searched by probation. Basically, they have a diminished expectation of privacy, too. And they get notice of that. They do get notice of that. They get general notice of it. They're not called ahead of time and told, hey, we're coming to search. I mean, they generally know that over this period you may show up. That's right. They're generally supposed to know. The onus is on the supervisee to tell them, because it is part of the condition of supervised release, that he or she let these individuals know that probation may be showing up. While you're pointing to that, I gather we have to return this to the district court for no other reason than to correct the written judgment, am I right? That's correct, Your Honor. The government's position is that the judgment of conviction should be affirmed. There's the ministerial task of having the box checked that the mandatory drug testing condition is suspended. And I would just point out that simply because it's being remanded for that ministerial task, we're in no way consenting or conceding that there should be any kind of additional procedures or any kind of fact finding. We understand. Okay. And one final point that I want to make is there's an argument made by Mr. Ettinger regarding the other conditions of supervised release to keep him on the straight and narrow, and in particular, the home visit. And in the reply brief, there's an argument that the government doesn't even address these arguments, which, of course, we do, because we do note that if a home visit was sufficient, then there would never be the need for any other kind of search condition. But I do think it's important to keep in mind the differences between a home visit and a search condition. A home visit is geared towards ensuring that, for example, a person lives where they say they live because they're supposed to maintain a particular residence and let pretrial know about it, that they're living in a place that's safe for them. For example, that somebody who's just been released, probation doesn't show up and find that people in the house are doing drugs, which may be the type of supervisee fresh out of a period of incarceration to be in that position, to make sure that they're not living with anybody that they're not supposed to be living with, that they're not associating, for example, with a known felon or violating another specific type of supervised release condition. And probation is authorized in that context to seize contraband that they find in plain view. But the search condition, it does go further than that. But it's necessary for it to go further than that. Because by the very nature of the offense here, the receipt and sale of stolen items, unless a supervisee was keeping stolen items in plain view, which is unlikely, this would allow probation when it only, again, only when it has the reasonable basis to believe that such contraband is there or evidence of a violation of supervised release, to go in and do a more thorough search at a reasonable... Where is he as we speak? I don't know where he's living, but he is out of... He's out. He's been out since September. He's living in that house. I don't know if he's living in that house. He's living at whatever residence I would assume he told probation he was living at. Could you just briefly address your adversary's argument today that Judge Gardefee just didn't explain the reasons for his sentence adequately. He said it may well be that specific... I know he didn't say specific deterrence is off the table, but he said it may well be that specific deterrence is not an issue here, and he makes a reference to general deterrence, and that given that these are search conditions imposed on almost all aspects of the life of Mr. Ettinger while he's under supervision, that that's not adequate explanation of the need for the condition. Well, Your Honor is correct. He didn't say that there was no need for specific deterrence, but Judge Gardefee was entitled to find, and he credited the government's argument that, for example, Judge Gardeefee only imposed a six-month sentence with six months of, I believe, community service. He was entitled to find that a period of supervised release that had a search condition could accomplish the specific deterrence that perhaps just putting Mr. Ettinger in prison for a year or more would not necessarily accomplish in light of all of the personal circumstances that Mr. Ettinger's counsel argued for and that were in the PSR about his health and his family and his lack of a prior criminal record. Thank you. Your Honors, this condition allows a search of Mr. Ettinger's home despite being there are no evidence of criminality in his home. It allows the search of his person despite there being no evidence of his using his person to commit a crime or his car to commit a crime. And the condition is, as my colleague has stated earlier, based on a reasonable — there has to be a reasonable basis for the search. That's in the provision. That — that doesn't — but that doesn't — It may be that upon the search there's no evidence found, but there must be — the probation officer must be able to articulate a reason to believe there's contraband present in order to conduct the search. But the fact that a reasonable suspicion is required does not make the condition lawful. The condition has to be lawful under 3583D. The reason given by the court for this condition being lawful, it's a just-in-case condition. What if he starts buying stolen goods in his house? What if he does something he's never done before? That kind of speculation, which is not supported by evidence in the record, is not a basis to impose this condition, especially given that it's a much greater deprivation of liberty than necessary, given all the other restraints that he's already under. We only objected to this one. We're not touching the others. We're not touching the prison sentence. But this is a great invasion of his privacy and that of his wife and four adult children for the next two years. Thank you. Thank you both. Well argued. That is the last case on the calendar to be argued today, so I'm going to ask the clerk to adjourn court. Court is adjourned.